United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC L. CREASE, | No. C-11-1374 EMC |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| MICHAEL J. ASTRUE, | |
| Defendant. | |
| _____/ | **(Docket Nos. 18, 23)** |

In November 2008, Plaintiff Eric L. Crease filed an application for supplemental security income ("SSI"). During administrative proceedings, his claim was denied. This Court has jurisdiction to review the administrative decision pursuant to 42 U.S.C. § 405(g). Having considered the parties' briefs and accompanying submissions, the Court hereby **GRANTS** the Commissioner's motion for summary judgment and **DENIES** Mr. Crease's.

### I.   FACTUAL & PROCEDURAL BACKGROUND

In November 2008, Mr. Crease filed an application for SSI, alleging disability as of September 1, 2008. *See* AR 141-47 (application). Mr. Crease's application was initially denied in February 2009, *see* AR 84-88 (notice), and again on reconsideration in July 2009. *See* AR 93-98 (notice). Mr. Crease then sought an administrative hearing before an administrative law judge ("ALJ"). *See* AR 102 (request). A hearing was held before ALJ K. Kwon on April 6, 2010. *See* AR 31 *et seq.* (hearing transcript).

///

///

///

1    On May 28, 2010, the ALJ held that Mr. Crease was not disabled under the Social Security Act. *See* AR 15-25 (ALJ decision). The ALJ evaluated Mr. Crease's claim of disability using the five-step sequential evaluation process for disability required under the federal regulation. *See* 20 C.F.R. § 416.920.

> Step one disqualifies claimants who are engaged in substantial gainful activity from being considered disabled under the regulations. Step two disqualifies those claimants who do not have one or more severe impairments that significantly limit their physical or mental ability to conduct basic work activities. Step three automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix. Benefits are awarded at step three if claimants are disabled. Step four disqualifies those remaining claimants whose impairments do not prevent them from doing past relevant work considering the claimant's age, education, and work experience together with the claimant's residual functional capacity ("RFC"), or what the claimant can do despite impairments. Step five disqualifies those claimants whose impairments do not prevent them from doing other work, but at this last step the burden of proof shifts from the claimant to the government. Claimants not disqualified by step five are eligible for benefits.

*Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).

At step one, the ALJ stated that Mr. Crease had not engaged in substantial gainful activity since November 19, 2008, *i.e.*, the application date. *See* AR 17 (ALJ decision). At step two, the ALJ found that Mr. Crease suffered from the following severe impairments: asthma, arthritis, deep vein thrombosis, right ankle impairment, bipolar disorder, and polysubstance abuse. *See* AR 17. At step three, the ALJ determined that Mr. Crease did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the appendix. *See* AR 17-18. At step four, the ALJ concluded that Mr. Crease had the residual functional capacity to perform light work, with certain exceptions (*e.g.*, based on his mental impairments), and that this functional capacity prevented him from performing any past relevant work. *See* AR 18-24. Finally, at step five, the ALJ found that, based on Mr. Crease's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could perform – *e.g.*, assembler and inspector/hand packager. *See* AR 24-25.

After the ALJ issued his decision, Mr. Crease sought appellate agency review, but his request for review was denied by the Appeals Council. *See* AR 6-8 (notice). This petition ensued.

## II. **DISCUSSION**

As the Ninth Circuit has explained, a court

> may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. A court review[s] the administrative record as a whole to determine whether substantial evidence supports the ALJ's decision. . . . [W]here the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed.

*Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

In the instant case, Mr. Crease asserts that the ALJ erred in six ways. Each of these errors is addressed below.

A.      Step Three Findings

Mr. Crease argues first that the ALJ erred by failing to explain the step three findings. As a preliminary matter, the Court notes that the ALJ did, in the decision, provide a clear explanation as to why Mr. Crease did not have a mental impairment or combination of impairments that met or medically equaled one of the listed impairments with respect to the Paragraph B criteria. *See* AR 17-18 (ALJ decision). However, the ALJ's analysis of the Paragraph C criteria was perfunctory, *see* AR 18; moreover, as Mr. Crease points out, the ALJ did not specifically articulate why his physical impairments did not meet or medically equal one of the listed impairments.

The problem for Mr. Crease is that, even assuming that the ALJ did err, any such error was harmless. Harmless error "exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal quotation marks omitted); *see also Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2001) (applying a harmless error analysis to an alleged step three error). Here, the ALJ's findings on Mr. Crease's mental and physical impairments "made elsewhere in [her] decision confirm the step three determination under review." *Id.*; *see also Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("consider[ing] the ALJ's treatment of the record evidence in

support of both his conclusions at steps three and five" because "it is proper to read the ALJ's decision as a whole" and "it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five"); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (stating that "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing"). Most notably, in discussing Mr. Crease's residual functional capacity, the ALJ discussed both Mr. Crease's mental impairments and associated functional limitations as well as Mr. Crease's physical impairments and associated functional limitations. *See* AR 19-23 (ALJ decision) (discussing, *inter alia*, medical records and/or evaluations of Dr. Lessenger, Dr. Lambe, Dr. Sun, and Dr. Bealick). To the extent Mr. Crease argues that the ALJ's comments on his physical impairments were not justified (*e.g.*, his ability to sit and stand), the Court does not agree. There is substantial evidence to support those comments (*e.g.*, medical records from Dr. Lessenger, medical evaluation by Dr. Sun). To the extent Mr. Crease contends that no employer would realistically have a sit/stand option, he has offered no evidence to support that claim.

B.     Credibility

Second, Mr. Crease contends that the ALJ erred in finding him only partially credible. According to the ALJ, Mr. Crease's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [determined] residual functional capacity assessment." AR 23-24 (ALJ decision).

The ALJ's decision reflects that the ALJ found Mr. Crease only partially credible based on a number of factors, including, *e.g.*, the objective medical evidence, his failure to follow prescribed medication or treatment, and his inconsistent statements. *See* AR 19-24. *See, e.g.*, AR 328 (Dr. Lessenger's notes) (stating that "[r]ecently [Mr. Crease] ran out of his warfarin and had not been following up for PT evaluations" and, "[a]s a consequence, the DVT flared and he was back in the hospital"); AR 333 (La Clinica Vallejo progress notes) (noting that Mr. Crease "[changes] what he says" about medications). In his motion, Mr. Crease simply argues that it is "hard[] to combat" the ALJ's credibility determination because "the negative credibility finding turns on factually

4

contradicting myself." Mot. at 1. This response verges on admission. Regardless, the fact remains that, under Ninth Circuit case law, an ALJ may consider, when she is weighing a claimant's credibility, "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid." *Tommasetti*, 533 F.3d at 1039; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (stating that an ALJ may consider, *e.g.*, inconsistencies in the claimant's testimony or between the claimant's testimony and her conduct). Accordingly, the Court finds no error by the ALJ.

To the extent Mr. Crease argues, as a part of his reply brief, that prior statements he made to doctors were not reliable because he was on medications at the time, the Court rejects that argument for two reasons. First, that argument was never presented in his opening brief; therefore, he is barred from raising it in the reply. Second, on the merits, the argument fails because there is nothing in the record to indicate that the doctors to whom he made the statements did not credit his statements or otherwise find his statements unreliable because he was on medications. *See, e.g.*, AR 298 (Dr. Sun's evaluation) (noting Mr. Crease's statement that he has been taking his medications but not making any comment that that fact affected the reliability of his statements). Moreover, in some instances, it appears that Mr. Crease was not actually taking medications at the time he saw the doctors of record. For example, some of Dr. Lessenger's notes indicate that Mr. Crease was not taking his prescribed medications. *See, e.g.*, AR 328 (Dr. Lessenger's notes). Similarly, Mr. Crease represented to Dr. Lambe during a mental evaluation that he was "not on any medication." AR 256 (Dr. Lambe's evaluation).

C.  Dr. Lessenger

Mr. Crease asserts that the ALJ erred by relying on the opinion of Dr. Lessenger, one of his treating physicians, in finding him not disabled based on his mental impairments. More specifically, Mr. Crease takes issue with the following statement by the ALJ: "The claimant's bipolar disorder and mental symptoms are alleged but the records show only mild symptoms and treatment actually stopped because his condition stabilized and did not warrant ongoing treatment per treating pain management doctor, James Lessenger, M.D., at the La Clinica Vallejo." AR 19 (ALJ decision). According to Mr. Crease, since his "main problems are mental, the passage about my Bipolar

disorder stabilizing and not warranting further treatment, according to may pain managing doctor, is a little puzzling!" Mot. at 1.

The Court does not find Ms. Crease's argument persuasive. Contrary to what Mr. Crease suggests, the medical records reflect that Dr. Lessenger treated him for not only his physical impairments but also his mental impairments. *See, e.g.*, AR 391 (progress note). Furthermore, it was Dr. Lessenger who filled out a mental impairment questionnaire – implicitly on Mr. Crease's behalf – which demonstrated Dr. Lessenger was well aware of Mr. Crease's mental impairments. *See* AR 367-69 (mental impairment questionnaire). In short, the ALJ did not err in making the above statement.

D.      SSR 82-59

Fourth, Mr. Crease asserts error based on the ALJ's repeated comments that he had failed to follow his prescribed medication or treatment. According to Mr. Crease, the ALJ could find his noncompliance significant only if the standards laid out in Social Security Ruling ("SSR") 82-59 were met.

The problem for Mr. Crease is that SSR 82-59 is not directly applicable. While SSR 82-59 does deal with the issue of noncompliance, the ruling applies only if a claimant would be found to be disabled. SSR 82-59 states, *inter alia*, that "[i]ndividuals with a *disabling impairment* which is amenable to treatment that could be expected to restore their ability to work must follow the prescribed treatment to be found under a disability, unless there is a justifiable cause for the failure to follow such treatment." (Emphasis in original). As the court explained in *Owen v. Astrue*, 551 F.3d 792 (8th Cir. 2008), SSR 82-59 "'explains the circumstances in which the Secretary may deny benefits to an otherwise disabled individual on the basis that the claimant has failed to follow . . . prescribed treatment' and 'only applies to claimants who would otherwise be disabled within the meaning of the Act.'" *Id.* at 800 n.3. Here the ALJ did not find Mr. Crease's failure to follow prescribed treatment was the cause of a disability finding. Rather, the ALJ found Mr. Crease was not disabled.

Moreover, contrary to what Mr. Crease suggests, a claimant's noncompliance may be considered in initially evaluating whether there is a disability in the first instance. *See, e.g.*, *id.*

(concluding that ALJ properly considered claimant's "noncompliance for purposes of determining the weight to give [doctor's] medical opinions"); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (stating that, "if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated"). Thus, it was fair for the ALJ to take note that Mr. Crease's "symptoms, when he has them, appear to be as a result of noncompliance with medication or treatment" and to conclude that Mr. Crease's "failure to follow up [and] failure to fill medications . . . compromise[] the overall gravity of [his] allegations of pain and limitations." AR 19 (ALJ decision).

Even if the ALJ had erred in finding Mr. Crease was not disabled – *i.e.*, that the ALJ should have found that the lack of compliance led to a condition sufficiently severe as to render Mr. Crease – any such error would have been harmless. *See Stout v. Commissioner, Soc. Sec'y Admin.*, 454 F.3d 1050, 1054-55 (9th Cir. 2006) (applying harmless error in Social Security context; indicating that harmless error occurs "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion"). Under SSR 82-59, an individual who would otherwise be found to be under a disability still may not be considered disabled for purposes of the Social Security Act where "[t]reatment which is clearly expected to restore capacity to engage in any SGA (or gainful activity, as appropriate) has been prescribed by a treating source" and "[t]he evidence of record discloses that there has been refusal to follow prescribed treatment." SSR 82-59. The record is undisputed that Mr. Crease was prescribed medications for his mental impairments, *see, e.g.*, AR 391 (Dr. Lessenger's note) (taking note of Mr. Crease's medications), and that, while on medications, he was "stable" and well enough so as not to be in need of mental health assistance. AR 391; *see also* AR 264-66 (psychiatric consultation by Dr. Achamallah) (taking note of the psychotropic medications that Mr. Crease currently takes, which "have been helpful in the past," and finding, *inter alia*, that "[t]here was no loosening of associations" or "flight of ideation" in Mr. Crease's thought process and that, although his insight was "[i]mpaired," his judgment was "[f]air" and his cognitive function was relatively normal).

In his reply brief, Mr. Crease makes an additional argument which was not previously raised in his opening motion – *i.e.*, that he was not taking medication during the relevant period because he did not have medical insurance at the time. Because Mr. Crease failed to make the argument in his opening brief, he cannot now raise it in reply. Even if the Court were to consider the argument, he would fare no better. Mr. Crease has offered no evidence that he was without medical insurance such that he could not obtain the prescribed medications, *see also* AR 389 (parole notes) (taking note of reminder to Mr. Crease that "he is covered [for medication] under health trans"); nor has he offered any evidence that it was not otherwise possible to obtain the prescribed medications without insurance. As for the letter written by Dr. Lessenger, it does not appear to be a part of the administrative record. In fact, the letter is dated well after the ALJ's decision and even the Appeals Council's denial of request for review. *Cf.* 20 C.F.R. § 404.970(b) ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."). Finally, the letter simply indicates that Mr. Crease needs to get back on his medications; it says nothing about Mr. Crease's failure to comply with prescribed treatment.

E.   Dr. Lambe

Fifth, Mr. Crease argues that the ALJ erred in conjunction with her evaluation of the medical opinion of one of the consulting physicians, Dr. Lambe. More specifically, Mr. Crease contends that the ALJ erred by failing to take into account that Dr. Lambe did *not* attribute Mr. Crease's inability to concentrate for two-hour increments to either his substance abuse or his being off of medications. This argument is without merit. There is nothing in the ALJ's decision to suggest that she failed to take this fact into account or otherwise misconstrued Dr. Lambe's findings. Indeed, with respect to Mr. Crease's inability to concentrate, the ALJ reported Dr. Lambe's findings as follows: "He is unable to maintain a good level of concentration and attention for 2-hour increments." AR 20 (ALJ decision). This statement does not link, either explicitly or implicitly, Mr. Crease's inability to concentrate either to substance abuse or not taking medications.

///

///

F.     Substance Abuse

Finally, Mr. Crease argues that the ALJ erred because she declined to determine whether his substance abuse was a contributing factor material to the determination of disability. Under 20 C.F.R. § 416.935, where there is medical evidence of drug addiction or alcoholism, one issue is "whether we would still find you disabled if you stopped using drugs or alcohol." 20 C.F.R. § 416.935(b)(1). "If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability." *Id.* § 416.935(b)(2)(i). In contrast, "[i]f we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability." *Id.* § 416.935(b)(2)(ii).

In the instant case, the ALJ did state that "a materiality evaluation is not necessary." AR 21 (ALJ decision). However, she stated that because, even putting evidence of substance abuse to the side, "[t]he balance of the substantial medical evidence simply fails to support the combination of impairments rises to a disabling level." AR 21. In other words, "drug and alcohol abuse is not a contributing factor material to a finding of disability as Dr. Lambe suggests." AR 21.

Given the above, the ALJ essentially did make a determination on materiality, and therefore there was no error. As the Commissioner argues, *Ball v. Massanari*, 254 F.3d 817 (9th Cir. 2001), is on point. There, the Ninth Circuit noted that, "[b]y removing alcoholism from the analysis (i.e., refusing to consider alcoholism), the ALJ was in effect addressing whether 'we would still find [the claimant] disabled if [he] stopped using drugs or alcohol.'" *Id.* at 822. Thus, the Court finds no error by the ALJ. The new exhibits submitted by Mr. Crease as a part of his reply brief – even if they could be considered (they were not provided as part of the opening brief nor do they appear to be part of the administrative record) – do not affect this conclusion. Similar to above, the new exhibits are all dated well after the ALJ's decision and the Appeals Council's denial of request for review.

///

///

G.  New Issues in Reply Brief

Finally, the Court notes that, in his reply brief, Mr. Crease has raised seven new "claims for relief" which were never presented in his opening motion. As above, the failure to make the arguments in the opening brief is a bar to Mr. Crease's raising the arguments in his reply brief. Even without this procedural bar, the arguments are all problematic on the merits. For example, Mr. Crease argues in several of the new "claims for relief" that, even after he began to take his prescribed medications, he still was impaired. However, that evidence on which he relies is not part of the administrative record, nor could it be since it is all dated after the ALJ's decision and the Appeals Council's denial of his request for review.

### III.  CONCLUSION

For the foregoing reasons, the Court denies Mr. Crease's motion for summary judgment and grants the Commissioner's cross-motion. The Clerk of the Court is instructed to enter judgment in accordance with this opinion and close the file in this case.

This order disposes of Docket Nos. 18 and 23.

IT IS SO ORDERED.

Dated: February 6, 2012

_____
EDWARD M. CHEN
United States District Judge